May it please the Court, my name is Camille Becker. I'm appearing on behalf of Petitioner Kuldeep Singh. I'd like to reserve two minutes for rebuttal, please. I'm here today to request that the Court remand the case to the BIA because the BIA failed to adequately protect Petitioner's due process right to counsel. The BIA overturned the IJ's adverse credibility determination and found that Petitioner's entire testimony was credible. The error that the BIA committed, however, was when it summarily affirmed the IJ's one-year bar determination without addressing Petitioner's ineffective assistance of counsel claim de novo or to remand the case back to the IJ so that the IJ could issue a new decision in light of the overturned adverse credibility determination. The IJ's credibility determination so tainted his analysis of the ineffective assistance of counsel claim that Petitioner was deprived of a fair hearing. Remand is necessary in order to assure that the Petitioner's due process right to a fundamentally fair hearing is protected. All right. But the question here is jurisdiction. Why do we have jurisdiction? Okay. The reason we have jurisdiction is twofold. First of all, we have to prove that we've exhausted our administrative remedies, and I believe we've done that. We've brought up the ineffective assistance of counsel claim before the IJ and then again at the BIA level. And because this Court has determined that an ineffective assistance of counsel claim is a due process violation, shall you show prejudice, that we have also preserved the right on appeal to the due process issue. Are there any cases in the context of the failure to file within one year that based on incompetence of counsel that we have found a due process violation? Do you have any authority for that? Specifically on that issue, I don't – I can't think of anything right offhand. So you're asking us to make some new law here? Yes. There's one thing that's kind of odd about this case. The BIA granted the withholding relief. That's correct. And we have a case which says that he doesn't have the authority to do that, that it has to go back to the IJ to grant that so that maybe we don't have a final order here? Well, that's definitely – that argument definitely supports our general notion that it should be remanded. We have taken a case in bank that is going to address that issue. So I think that that little aspect of it probably has to be held until we have the result of the in-bank hearing. Tell me why you think – not referring to the asylum. I know that there's certain additional benefits that you get from asylum over a withholding. But what about the cat claim? Actually, the withholding gives him essentially all of the benefits that one would get from the cat claim. Is that correct? That's correct. The reason that we've appealed the cat claim is in the case that in the future there might be changed circumstances or such, it gives him potentially a stronger case for defending those changed circumstances. But couldn't he raise that then? I'm sorry? Couldn't he raise it then? He did raise it at the BIA. Couldn't he? Oh, at that point he could re-raise it? Yes, he could. But it's our position that the facts on the face of the record have made him eligible for the cat. And he has proven that it's more likely than not that he'll be tortured until he returns to his home country. If we were to rule against you on the cat claim now, then would he be foreclosed in the future of raising it? I think you're maybe taking a risk here. Well, I guess they could still argue if you try to raise it later that it was resolved before and you didn't appeal, so you waived it. I guess maybe they could. Right. If we fail to argue it here, aren't we exhausting our administrative remedies? If we dismiss the claim as moot, then you wouldn't have that problem of raising it in the future. That's correct. Hopefully you won't do that, though. Let's go back to the question of whether there's jurisdiction over the tenure period. Okay. Let's assume for the moment that this is a due process issue, the counsel issue, as opposed to a statutory exception. Okay. I mean, it seems to me it could simply be an exception come within the exceptions to the one year, and then it wouldn't. In other words, it may just be an extraordinary circumstance, and therefore statutory, therefore not due process. But the statute, the Real ID Act exception applies to either questions of law or the Constitution. Correct. So in one way, that doesn't matter. Right. But still, this is heavily factual. I mean, it's really not a pure legal question of any kind. We're not asserting that it's a legal question per se. We're saying it's a constitutional question. So you're saying that it wouldn't come under the legal question part, but that the constitutional question part includes any constitutional question, whether factual or not. It does. And this Court in Ramadan, which is a case that was cited by the government in support of the jurisdictional bar, said that the Real ID Act actually muddied this distinction that the Ninth Circuit has traditionally accepted, that there's a bar to the one year issue in this court. And that distinction was muddied, and the court said that the Real ID Act, Section 106, modifies judicial review, and it's effective immediately, and it restores jurisdiction that was previously precluded, at least in so far as it raises a constitutional question. So here's the... So you think the Real ID Act has overruled our cases that say that when a due process claim is something that the agency could reach it, because it's really a complete overlap, that we treat it as something that's within the agency's purview and discretionary, and therefore not, or at least not as a constitutional issue for purposes of judicial review? I think that what it does is it sets forth the notion, Ramadan sets forth the notion that there's a broader amount of jurisdiction over the one year issue, so long as there's a constitutional claim involved with that one year issue. But broader in what sense? Broader in that you can more fully analyze the facts. We're not asking the court to re-litigate the one year issue here. What we're asking the court to do is determine, had he not received ineffective assistance of counsel, would the IJ have fully considered his full claim regarding the exceptions? And here the IJ didn't do that. Here the IJ tainted his decision so much with his determination that he came here specifically to apply for asylum, and when he got caught, he decided to assert ineffective assistance of counsel. Well, that decision was overturned by the BIA. The BIA said that he's credible, and so his entire testimony must be credible. And when the IJ issued his decision regarding whether the ineffective assistance took place in this case, he, his, even during his, before he questioned him, I'd like to go to the record, even before he questioned him regarding this, he stated to the Department of Homeland Security Counsel that he didn't believe him. He said before he even allowed him to testify as to why he didn't file his application in time, he said, I don't, he's not, he's not a credible witness. Tell me what the facts are as you know them as to why the application wasn't filed within the one year period. Well, he was in status for at least one year following his date of entry. He had applied for extension of status, and had his attorney followed through with those status extension requests, he could have been eligible for an exception to the one-year bar. And that's, that's, that's the most important factual issue here. In addition, he also could have qualified for changed circumstances because his father was killed at the hands of the police, and he was killed for his political, his political beliefs, and as a result of that, he was, he was, petitioner's case necessitated the late filing of an application because his, his, his fear, he testified that before that date, he had hoped that things would get better, and he was hoping to stay in status and not have to file for asylum, but after that, it became so severe that he had to file the late application. Is it all right if I? Yes, please. Thank you. Thank you very much. May it please the Court, my name is Abraham Simmons. I am here representing the Attorney General in this case, and we need to review the record and take a couple of facts that are pretty clear in the record in order to understand the answers to some of the questions that you've posed. I filed my brief in this case almost a year ago, actually a year ago yesterday, and for the next two months, the status of the law did not change much, but then there was the Ramadan case. The Ramadan case does change a few things, but nothing that actually applies to this case, and here's why. Something that I think both counsel need to know is that Ramadan is not yet final. Absolutely, Your Honor, and I was going to discuss that. We do have a rehearing that has been made, but the issues that were discussed there and the ones that were discussed on rehearing don't really affect the facts and the actual result in this case. In the ordinary course, a person gets one year to file an asylum claim. There's a regular bar, 8 U.S.C. Section 1158A.3 says, okay, you only get a year. If after a year you haven't filed your claim, you're barred. Ordinarily, in the ordinary course, the I.J. makes a decision. Well, when did you get here? Well, when did you file your claim? Those are usually factual determinations, and that ends the question, and then there's no jurisdiction in this court to reconsider those facts. In this case, the I.J. found that in October of 1999, he entered the United States. He didn't file a claim until September of 2002, well beyond the deadline. Wait, says the petitioner. There are some extraordinary circumstances, and here's where it starts getting a little funny. We start talking about dates, but ultimately the dates prove that nothing really changes. He says, I saw an attorney, and the attorney didn't answer my question, and he didn't help me. But it's undisputed in the record that he did not see that attorney until November of 2001. Wait, says the petitioner. Extraordinary circumstance. I also get to move that October date a little bit further up. It's not October 1999 that I got here, but it's October 2000 when I fell out of status. That really matters. The I.J. says, let's take a look at that. October 2000 to November 2001. He says, I saw an    attorney. It still doesn't matter. And ultimately, futzing around with those dates don't change anything. We still have a one-year bar, and that bar is out of status for factual reasons. Ramadan doesn't change that, even if it goes everywhere. So then he says, as I understand it, although not particularly in his briefs here, but I gather below, he argued, that his father died less than a year, that that moves the date forward further. Because it becomes a changed circumstance in terms of his the object, his asylum claim being a different asylum claim essentially. Another factual issue that this Court does not have jurisdiction, even under Ramadan, to consider. Does that... That could be a legal issue as to whether that would matter. Right. Not articulated here as to whether that changed the  circumstance. When did the father die? Was it within the one-year period of his entry? I do not recall from the record exactly when the father died, Your Honor. But even assuming that that becomes an issue, you have another two hurdles to come over before you can actually try and make the argument for a changed circumstance in extraordinary circumstances. You still need to  see counsel within the year. He still did not see counsel within the year. He still, if he did see counsel within the year, did not comply with Lozada in order to give counsel that opportunity, the notice and an opportunity to respond in order to demonstrate why he did not try and demonstrate that his father was... It did, in fact, comply with Lozada, he claims. And the IJ said that it was too late for a hearing. And that did not actually give a reasonable opportunity for the counsel actually to submit a Lozada statement as to whether there was a reason why when he was accused of ineffective assistance, there was a good reason for doing that. And that, again, factual determination, something that this court should be very careful before trying to take a look at all the facts to figure out whether there's a different decision that it would come out with. So for all those reasons, we think that in as far as the asylum claim was pre-terminated, this court should dismiss the appeal from that aspect of the case. I think, Your Honor, put your finger on another important point in this case, and that is he was ultimately granted withholding to deportation to India. There is nothing more, I think, that he gets from the Catt claim. And so it doesn't seem to be necessary to address that issue. Let me ask you, do you think we should just dismiss that claim as moot? Until I understood that this court had a difficulty with the finality of the BIA's order and the en banc determination, I would request, actually, that we have an opportunity to brief that issue. Why is there any problem with the finality? Because the finality cases deal with situations in which the BIA issues an order of removal. What the case is told is that the BIA can't issue an order of removal. It has to be the IGA, but there was no order of removal here. That's correct. So I'm not sure there's a problem. I'm not sure, Your Honor, and I would request an opportunity to brief that subject. I'm not sure either. It just occurred to me this morning when I was reviewing the cases that this is a potential issue. There would have been, might have been, had everything been denied, but everything wasn't denied. In fact, there isn't a removal order, so the BIA didn't have to issue one, so that's my understanding. But we'll see. I think all that is quite important for this part of the analysis is there's nothing more he could get from Kat that he already got from the withholding of removal. But there might be in the future. I'm sorry? But there might be in the future. Only if he does something bad. Right. Normally issue an order and then just mark it withheld because of some circumstance. I'm sorry. I do not understand the question. I'm just trying to understand the procedure. Would you normally issue an order of removal and then say it's withheld, or you just don't issue it if it's withheld? I'm not certain, Your Honor. I know that the order in this case did come down saying removal is withheld as to whether there's a separate order saying. I believe that in that order there's probably something that says he is removable, however he's found to be. It's not a removal order, but it's not an order that he should be removed. That's correct. It's not like the grand relief of stay. It's different. I think it probably would be worthwhile for this Court to receive at least a brief on whether there's an issue with the finality of this, and we can address that as well. Well, why not? If we decide we can't decide it ourselves, we'll ask you for help. Well, Your Honor, if there's nothing more, I think that this Court understands how bound up in the facts this, the asylum claim is, and we don't really get to the Ramadan issue. But if you do... Well, I do have a question, though. Yeah. What is the, as I understand the petitioner's argument, it runs this way, that whatever this ineffective assistance claim is, it's a constitutional issue. And therefore, with regard to the Real ID Act, it doesn't matter whether it's fact-bound. If it's a constitutional fact-bound issue, then there is jurisdiction. Well, if it's a statutory fact-bound issue, there isn't. Does the agency have a position on that? There is a long answer to that very seemingly short question. Let me just... It's a little more complicated than that, because I think there are two possibilities. I mean, one of them is, one answer might be it's not a constitutional issue. And the other answer would be it is a constitutional issue, but we don't understand the Real ID Act provision to go to a constitutional issue that's really a factual one. Right. I think you hit the nail on the head on the first aspect of it. It looks like a constitutional issue, but in this case, it really is not, for a number of reasons. First of all, you need a colorable constitutional claim. In this case, the facts, as found by the IJ, which we really don't want to mess with, make pretty clear that there is not an actual opportunity for the court to review the constitutional claim, because it's still more than a year, no matter how it comes out, if you accept those facts that the IJ found were clear. The second problem with it is that even an ineffective assistance of counsel claim is not always a constitutional issue. There is no constitutional right to counsel in an immigration case. So in this instance, it may be coming in as an extraordinary circumstance, statutory exception. That's correct. And to the extent that he has already conceded, he's not making a legal claim. That's a difficult argument to make. Now, there is, I will alert the Court, some debate as to how much of an ineffective assistance of counsel claim can be raised under the Constitution. But I think that the proper approach and the right answer in this case is to recognize that under the facts of this case, all we really have is a legal claim based upon ineffective assistance for a claim, for a fellow who did not see a lawyer until more than a year after he arrived. Thank you very much. Thank you, Your Honor. Counsel, we'll give you one minute. We'll add a little bit to your 38 seconds, and we'll give you a minute. I'd just like to reaffirm my previous assertion that there is a due process right to counsel in deportation proceedings, and that is what this case falls under. Also, the prejudice here suffered by Petitioner was severe in that the I.J. failed to consider how he would have been eligible for the exceptional circumstance and changed circumstances because his decision was so tainted with his negative credibility determination. Importantly, had Petitioner's former counsel filed the extension, he would have been eligible to remain in status up until the point he met with his new attorney. The regulations allow the government to award an extension, to grant an extension, even if there's a late filing, under the discretion of the officer. So a prudent attorney would have done that, and he would have been in status, but the I.J. didn't consider these facts because he determined from the get-go that he was not a credible witness, and that he came here specifically to file for asylum. Thank you very much. Thank you, counsel, for a good argument.
judges: B. Fletcher, Berzon, Trager